United States District Court
For the Northern District of California

1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10    ST. MICHAEL BALZARINI,                    No. C 09-1796 MHP (pr)

11                 Plaintiff,                   **ORDER OF DISMISSAL**

12          v.

13    GOODRIGHT; et al.,

14                 Defendants.
                                           /
15

16                            **INTRODUCTION**

17          St. Michael Balzarini, an inmate at Salinas Valley State Prison, filed this pro se civil

18    action under 42 U.S.C. § 1983.   The complaint is now before the court for review pursuant

19    to 28 U.S.C. §1915A.

20                            **BACKGROUND**

21          In his complaint, Balzarini alleges various problems in connection with the criminal

22    case against him that led to his conviction and 65-years-to-life sentence in or about 1995.  He

23    alleges, for example, that there was an illegal search and seizure, he received ineffective

24    assistance of counsel, he was improperly physically restrained during his trial, there was a

25    deficient lineup, and he was denied access to certain DNA evidence.

26          The complaint appears to have two DNA-related claim.  He alleges that he filed a

27    motion in state court for DNA evidence. Although he did not receive relief from the state

28    court, his trial counsel sent him on April 9, 2006 "a letter and a copy of the DNA Forensic

      Report, in which it cleared this Plaintiff, showing innocence." Id. At 14. The report allegedly

1  existed at the time of trial, but was not presented at the trial. See id. He also appears to

2  request DNA testing of other evidence.  Attached to the complaint is a motion for DNA

3  testing pursuant to 18 U.S.C. § 3600.

## DISCUSSION

5  A federal court must engage in a preliminary screening of any case in which a prisoner

6  seeks redress from a governmental entity or officer or employee of a governmental entity.

7  See 28 U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and

8  dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may

9  be granted, or seek monetary relief from a defendant who is immune from such relief. See

10  id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v.

11  Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

12  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that

13  a right secured by the Constitution or laws of the United States was violated and (2) that the

14  violation was committed by a person acting under the color of state law. See West v. Atkins,

15  487 U.S. 42, 48 (1988).

16  The trial-related claims must be dismissed under the Heck rule.  The case of Heck v.

17  Humphrey, 512 U.S. 477 (1994), held that a plaintiff cannot bring a civil rights action for

18  damages for a wrongful conviction or imprisonment, or for other harm caused by actions

19  whose unlawfulness would render a conviction or sentence invalid, unless that conviction or

20  sentence already has been determined to be wrongful. See id. at 486-87.  A conviction or

21  sentence may be determined to be wrongful by, for example, being reversed on appeal or

22  being set aside when a state or federal court issues a writ of habeas corpus. See id. The

23  Heck rule also prevents a person from bringing an action that -- even if it does not directly

24  challenge the conviction -- would imply that the conviction was invalid.  The practical

25  importance of this rule is that plaintiffs cannot attack their convictions in a civil rights action

26  for damages; the conviction must have been successfully attacked before the civil rights

27  action for damages is filed. The trial-related claims are dismissed without prejudice to

28  Balzarini filing a petition for writ of habeas corpus to attack his conviction.  Balzarini's

1  claim that DNA test results in existence at the time of trial were not presented at trial is

2  among the claims that have to be dismissed under the Heck rule.

3        The claim for a right to have DNA testing done today must be dismissed based on the

4  recent decision from the U.S. Supreme Court in District Attorney's Office For The Third Jud.

5  Dist. v. Osborne, 129 S. Ct. 2308 (2009), in which the Court held that there was no federal

6  constitutional right to obtain post-conviction access to the State's evidence for DNA testing.

7  The Fourteenth Amendment's Due Process Clause limits a State's power to take away life,

8  liberty or property, without procedural protections. See id. at 2319. The person claiming a

9  due process violation with regard to postconviction DNA testing must show he has a

10  protected liberty interest "to prove his innocence even after a fair trial has proved otherwise."

11  Id. The Court found that Osborne, a prisoner under judgment of the State of Alaska, had a

12  liberty interest in demonstrating his innocence with new evidence under Alaska state law

13  (thus satisfying the requirement that there be a protected liberty interest) but did not show

14  that the Alaska state procedural protections attendant to that liberty interest were

15  constitutionally inadequate. See id. at 2319-20.  The Court also rejected the argument that

16  Osborne had a freestanding substantive due process right to DNA evidence. Id. at 2322-23.

17        The Court explained its analysis of Osborne's procedural due process claim in depth.

18  As a result of his conviction, Osborne had a lesser liberty interest than a criminal defendant

19  who had not yet been convicted, and the State correspondingly had more flexibility in

20  deciding what procedural protections to afford in the context of postconviction relief than in

21  the context of a criminal trial. See id. at 2320.  The question thus was "whether

22  consideration of Osborne's claim within the framework of the State's procedures for

23  postconviction relief 'offends some principle of justice so rooted in the traditions and

24  conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized

25  principle of fundamental fairness in operation.'" Id. (quoting Medina v. California, 505 U.S.

26  437, 446, 448 (1992)).  The Court concluded that there was "nothing inadequate about the

27  procedures Alaska has provided to vindicate its state right to postconviction relief in general,

28  and nothing inadequate about how those procedures apply to those who seek access to DNA

3

United States District Court

For the Northern District of California

1    evidence." <u>Osborne</u>, 129 S. Ct. at 2320.  Alaska law had provided a substantive right to be

2    released on a compelling showing of new evidence establishing innocence, exempted those

3    claims from statutory time limits, allowed for discovery including access to DNA evidence

4    upon certain conditions, and used procedures similar to other jurisdictions' procedures for

5    requesting DNA testing.  <u>See id.</u>  Alaska also may have provided an additional right of access

6    to DNA evidence using a three-part test for those who could not obtain relief under the

7    general postconviction procedures.  <u>Id.</u> at 2321.  Because it was the burden of the person

8    seeking DNA evidence "to demonstrate the inadequacy of the state-law procedures available

9    to him in state postconviction relief," and Osborne had not done so, he had not shown a

10   procedural due process violation.  <u>Id.</u>

11          Applying <u>Osborne</u> to Balzarini's DNA evidence claim proves fatal to his case.  For

12   Balzarini to be able to state a claim for a due process violation relating to the DNA evidence,

13   he must show (1) the existence of a protected liberty interest and (2) that California's

14   procedures for protecting that interest violate a fundamental principle of justice or are

15   fundamentally unfair.  This court will assume without deciding that there is a liberty interest,

16   i.e., that California state law provides a right comparable to that in Alaska to be released

17   upon a compelling showing of actual innocence based on newly discovered DNA evidence.

18   <u>See generally</u> Cal. Penal Code § 1485 (providing for discharge from custody upon petition

19   for writ of habeas corpus when there is no legal cause for petitioner's imprisonment or

20   restraint); <u>In re Weber</u>, 11 Cal.3d 703, 724 (Cal. 1974) (newly discovered evidence does not

21   warrant relief "unless (1) the new evidence is conclusive, and (2) it points unerringly to

22   innocence").  But making that assumption only leads one to the second half of the due

23   process analysis.

24          The second thing Balzarini must show is that the consideration of his claim within the

25   framework of California's DNA access procedures in California Penal Code §1405 "'offends

26   some principle of justice so rooted in the traditions and conscience of our people as to be

27   ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in

28   operation.'"  <u>Osborne</u>, 129 S. Ct. at 2320 (citation omitted).  Balzarini has not done so, nor

4

United States District Court

For the Northern District of California

1  could he.  California Penal Code §1405 provides an elaborate scheme under which a person

2  in prison may seek and obtain DNA testing of evidence.  The statute provides for a written

3  motion to be made by a person seeking performance of DNA testing (§1405(a)); sets forth

4  the particular showing that the movant must make (§1405(c)(1)); provides for the

5  appointment of counsel to assistant an indigent movant (§1405(b)); provides for notice to the

6  prosecutorial authority and an opportunity to be heard (§1405(c)(2)); allows disclosure of

7  results from tests already performed (§1405(d)); allows for a hearing on the motion

8  (§1405(e)); provides criteria under which the court "shall grant the motion for DNA testing"

9  (§1405(f)); provides that, if testing is allowed, the court "shall identify the specific evidence

10  to be tested and the DNA technology to be used" (§1405(g)(1)); describes a procedure for

11  selecting the laboratory at which testing will be done (§1405(g)(2)); describes how costs will

12  be allocated and allows for costs not to be allocated to an indigent inmate (§1405(h));

13  provides for judicial review by petition for writ of mandate or prohibition (§1405(j));

14  provides for testing "as soon as practicable" unless the court orders it expedited (§1405(k);

15  and provides that the right to file such a motion is absolute and not waivable (§1405(m)).

16  Balzarini has not alleged anything to indicate that the consideration of his DNA testing claim

17  within the framework of §1405 would offend some fundamental principle or justice or was

18  fundamentally unfair.  The § 1983 claim is dismissed without leave to amend.

19      Finally, Balzarini's motion under 18 U.S.C. §3600 for DNA testing is DENIED

20  because that procedure is for prisoners convicted of federal crimes.  Balzarini was not

21  convicted of a federal crime.

22                              **CONCLUSION**

23      For the foregoing reasons, the complaint is DISMISSED for failure to state a claim

24  upon which relief may be granted.  The motion for DNA testing is DENIED.  Further leave

25  to amend will not be granted because it would be futile.  The clerk shall close the file.

26      IT IS SO ORDERED.

27  Dated: October 5, 2009

28

                                          Marilyn Hall Patel
                                          United States District Judge

5